UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALLENA BURGE,

     Plaintiff,

v.                                     CASE NO: 8:07-cv-2217-T-23MSS

THEODORE K. FERGUSON, et al.,

     Defendants.

_____/

## ORDER

This lawsuit arises from an investigation and criminal charges of Medicaid provider fraud against the plaintiff, a dentist specializing in oral surgery.  The plaintiff sues Walter Bowlin, Jr., D.D.S., ("Bowlin"), Theodore K. Ferguson ("Ferguson") and Patrick J. Nieman ("Nieman") in their individual capacities and alleges both a deprivation of her federal constitutional rights actionable under 42 U.S.C. § 1983 and related state-law claims.  Pursuant to Rules 12(b)(6) and 12(e), Federal Rules of Civil Procedure, Bowlin moves (Doc. 16) for dismissal of the claims against Bowlin and alternatively for a more definite statement of the plaintiff's claims.  Additionally, Ferguson and Nieman move (Doc. 26) to dismiss the claims against them.  The plaintiff responds (Docs. 25, 29) in opposition.

**BACKGROUND**

The complaint (Doc. 1), which fails to present each discrete claim for relief in a separate count as required by Rule 10(b),[1] includes the following allegations, presumed true for the purpose of this motion.

On June 28, 2002, Ferguson, an investigator for the Medicaid Fraud Control Unit (the "MFCU") of the Florida Attorney General's Office, "forced his entrance into the private business of Plaintiff, where he seized and arrested Plaintiff by unnecessary force." (Compl. ¶ 4)  The complaint describes the event as a "SWAT-style" arrest that was "effectuated in a manner that would shock the consious [sic] of the citizens of St. Petersburg." (Compl. ¶ 18)   The arrest was preceded and followed by an "illegal search" of Plaintiff's business premises, and followed by "an illegal search" of the plaintiff.  (Compl. ¶ 4)  Although the complaint fails to specify who conducted the searches, a further allegation (Compl. ¶ 18) that Ferguson "coordinated" the plaintiff's arrest (and the absence of other named defendants) suggests that Ferguson directed or participated in the allegedly unlawful searches.  Additionally, the complaint alleges that Ferguson fabricated unspecified evidence "and/or presented [unspecified] evidence in a false light" to unspecified authorities, which conduct resulted in  the plaintiff's arrest. (Compl. ¶ 19[2])  Without elaboration, the complaint further alleges (Compl. ¶ 20) that Ferguson "conspir[ed] with Defendant Bowlin to 'find' Medicaid fraud where it did not exist."

---

[1]  See Fed. R. Civ. P. 10(b); Anderson v. Dist. Bd. of Trs. of Cent. Fla. Comty. Coll., 77 F.3d 364, 366-67 (11th Cir. 1996).

[2]  See also Doc. 16-2 (felony Information filed by Assistant State Attorney in the Sixth Judicial Circuit, Pinellas County, charging Burge with a violation of Section 409.920(2), Florida Statutes).

Besides incorporating the previous allegations, the complaint alleges (Compl. ¶ 27) that Bowlin, a dentist practicing in Palm Harbor and the plaintiff's business competitor, acted as an expert witness in Ferguson's investigation. Apparently, as part of an MFCU investigation into the plaintiff's billing practices, the Attorney General hired Bowlin to review and evaluate the plaintiff's billing records.[3] The complaint alleges that Bowlin intentionally or recklessly provided false information about the plaintiff's Medicaid billing practices to authorities investigating the plaintiff and (although the records he reviewed did not support the conclusion) informed the authorities that "Plaintiff engaged in Medicaid fraud." (Compl. ¶¶ 30, 32, 40) Additionally, Bowlin went beyond the scope of his duty as an expert witness by personally contacting the plaintiff's patients and by "relaying his alleged information directly to Officer Ferguson instead of" to an unspecified state panel. (Compl. ¶ 30) Bowlin also provided false information about the plaintiff's Medicaid billing practices to the plaintiff's patients and told the patients that the plaintiff "malpracticed on her patients." (Compl. ¶¶ 31, 34, 40) Finally, the complaint alleges that (a) Bowlin and Ferguson's joint actions "constituted a conspiracy to interfere with the civil rights of Plaintiff" (apparently, the rights under the Fourth and Fourteenth Amendments alleged to have been violated by "the Defendants, individually and in concert") "and/or outright destroy Plaintiff's dental practice," (b) Bowlin and Ferguson acted in furtherance of the conspiracy "by directing Plaintiff's patients to cease their appointments with Plaintiff and come directly to Bowlin for dental treatments paid for by Medicaid," and (c) as a

---

[3] See Compl. ¶¶ 30, 40; Doc. 25 at 2 ("Defendant [Bowlin] was working as an expert for the State's Medicaid Fraud Control Unit reviewing the billing records of Plaintiff."); Doc. 16-3 at 2 (stating that Bowlin "was retained by the Office of the Attorney General to assist in determining the amount and type of fraud committed by Dr. Burge.").

result, "a significant number of Plaintiff's former patients" are now seeing Bowlin for their dental needs.  (Compl. ¶¶ 27, 29)

After again incorporating the previous allegations, the complaint alleges that Nieman was Ferguson's supervisor and was required to approve reports, arrests, and warrants during Ferguson's investigation.  (Compl. ¶ 46)  Nieman possessed actual or constructive knowledge of Ferguson's conduct, and Nieman's "acquiescence" in Ferguson's conduct directly led to the constitutional violations alleged against Ferguson. (Compl. ¶ 45)  Additionally, Nieman knew that, upon commencing employment with the MFCU in 1998, Ferguson possessed no pertinent previous experience.  Moreover, Ferguson's training for his duties comprised a three-day training seminar.  (Compl. ¶ 47) Accordingly, Nieman knew or should have known that the investigation into the plaintiff's billing practices was Ferguson's "first big Medicaid Fraud Unit case" and therefore should have known that Ferguson needed direction and guidance and "that his conduct endangered Plaintiff's rights."  (Compl. ¶¶ 47-48)  In short, Nieman "was deliberately indifferent to the need to train officers (including Defendant Ferguson) to properly investigate claims of Medicaid fraud and this failure to train led directly to the deprivation of Plaintiff's Constitutional rights."   (Compl. ¶ 48)  Finally, Nieman intentionally or recklessly provided unspecified false information about the plaintiff's Medicaid billing practices to unspecified authorities, which information caused the filing of the criminal charges against the plaintiff.  (Compl. ¶ 53)

Finally, the complaint alleges that on December 22, 2003, the State Attorney's Office filed a nolle prosequi terminating the criminal prosecution against the plaintiff because "'further investigation of this case by the State Attorney's Office . . . revealed

that further prosecution is not warranted.'" (Compl. ¶ 39)   The plaintiff commenced this action on December 6, 2007.

## DISCUSSION

A motion under Rule 12(b)(6), Federal Rules of Civil Procedure, challenges the legal sufficiency of the complaint.  On a Rule 12(b)(6) motion, the complaint's factual allegations are accepted as true and construed most favorably to the plaintiff.  Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002).  "However, a court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for her."  Peterson v. Atlanta Hous. Auth., 998 F.2d 904, 912 (11th Cir. 1993).  Rule 8(a)(2) requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds.  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).  However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  Twombly, 127 S. Ct. at 1965 n.3.  The plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 127 S. Ct. at 1964-65 (citation omitted).  "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true."  Twombly, 127 S. Ct. at 1965 (citations omitted).  In short, the complaint must include "enough facts to state a claim to relief that is plausible on its face."  Twombly, 127 S. Ct. at 1974.  Moreover, "while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint

contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (internal quotation marks and citations omitted).  "A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations–on their face–show that an affirmative defense bars recovery on the claim." Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc).  Finally, materials considered on a motion to dismiss under Rule 12(b)(6) are generally limited to the complaint and attached exhibits.[4]  Accordingly, the testimony and affidavits attached to the plaintiff's response in opposition (Docs. 25-2, 25-3, 25-4, and 25-5) receive no consideration except insofar as they clarify actual allegations in the complaint.  See Pegram v. Herdrich, 530 U.S. 211, 230 n.10 (2000).

Qualified Immunity

On a motion to dismiss, "the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined." GJR Invs., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1366 (11th Cir. 1998).  A Section 1983 claim against a person arguably entitled to qualified immunity (e.g., a government official sued in his individual capacity) confronts a heightened pleading requirement. GJR Invs., 132 F.3d at 1367.  To protect public officials from the burdens of protracted litigation and dispose of non-meritorious claims, the Eleventh Circuit has "tightened the application of Rule 8 with respect to § 1983 cases" and requires a Section 1983 plaintiff to allege "with some specificity" the facts supporting a claim against a public official arguably entitled to qualified immunity. GJR

---

[4]  Under the "incorporation by reference" doctrine, a document attached to a motion to dismiss may be considered part of the pleadings if its contents are alleged in the complaint and the document is (1) central to the plaintiff's claim and (2) undisputed. See Horsley v. Feldt, 304 F.3d 1125, 1134-35 (11th Cir. 2002); Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).

Invs., 132 F.3d at 1367.[5]  The complaint must include "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity."  Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) (quoting Venney v. Hogan, 70 F.3d 917, 922 (6th Cir. 1995), abrogation recognized by Goad v. Mitchell, 297 F.3d 497, 503 (6th Cir. 2002)).[6] Although controversial, the heightened pleading requirement permits a potentially immune defendant to frame a fact-specific qualified immunity defense at an early stage and enables the court to conduct the fact-specific inquiry contemplated by Saucier v. Katz, 533 U.S. 194 (2001).  Absent a heightened pleading requirement, a meaningful Saucier inquiry is often impossible.  Accordingly, some courts rejecting a heightened pleading requirement as inconsistent with Rule 8(a)'s notice pleading standard have adopted a rule that effectively reproduces the requirement.  See, e.g., Thomas v. Independence Twp., 463 F.3d 285, 300-302 (3d Cir. 2006); cf. Schultea v. Wood, 47 F.3d 1427, 1433-34 (5th Cir. 1995).

Qualified immunity protects a government official performing discretionary functions if the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v.

---

[5]  Following Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993), Crawford-El v. Britton, 523 U.S. 574 (1998), and Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), the majority of courts of appeals reject a heightened pleading requirement for a Section 1983 claim against an individual defendant arguably entitled to qualified immunity.  See Gene Martin Auto Sales, Inc. v. Davis, No. 2:07CV937-MEF, 2008 WL 1990003, *3 n.4 (M.D. Ala. May 5, 2008); see also Erickson v. Pardus, 127 S. Ct. 2197 (2007) (applying the pleading standard in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007), to a Section 1983 claim against an individual defendant); Vanderford v. McNeil, No. 08-14108, 2008 WL 4629087, *2 & n.1 (S.D. Fla. Oct. 16, 2008) (concluding that Twombly and Erickson require abandonment of a heightened pleading standard).  But see Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269, 1274-75 (11th Cir. 2008); Epps v. Watson, 492 F.3d 1240, 1242 (11th Cir. 2007).

[6]  But see Thomas v. Independence Twp., 463 F.3d 285, 293-94 (3d Cir. 2006); Jacobs v. City of Chicago, 215 F.3d 758, 765 n.3 (7th Cir. 2000).

Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  Moreover, "[b]ecause qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation,' questions of qualified immunity must be resolved 'at the earliest possible stage in litigation.'"  Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (citations omitted).  "It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint 'fails to allege the violation of a clearly established constitutional right.'"  Gonzalez, 325 F.3d at 1233 (citation omitted).[7]

Saucier v. Katz first requires a determination whether the plaintiff's allegations, if assumed true and favorably construed, establish a specific constitutional violation. Saucier v. Katz, 533 at 201.[8]  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  Saucier, 533 U.S. at 201.  However, if the complaint alleges a constitutional violation, the inquiry turns to whether that right was clearly established by then-existing legal precedent.  Saucier, 533 U.S. at 201.  "Clearly established" means that "[t]he contours of the right must be sufficiently clear that a reasonable official would

---

[7] See also Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").  But see Thomas, 463 F.3d at 293-94 (concluding that "a plaintiff has no obligation to plead a violation of clearly established law in order to avoid dismissal on qualified immunity grounds.").

[8] "A public official who asserts a defense of qualified immunity must establish that he was engaged in a discretionary function when he performed the acts of which the plaintiff complains."  Epps, 492 F.3d at 1243 (citation and internal quotation marks omitted).  However, no party disputes that the defendants acted within their discretionary authority as public officials at the time they allegedly violated the plaintiff's constitutional rights.

understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Ferguson

The complaint alleges that Ferguson fabricated evidence that resulted in the plaintiff's arrest without probable cause.  Although failing to identify the fabricated evidence or to state to whom Ferguson presented the evidence or how the presentation resulted in the plaintiff's arrest,[9] the complaint's allegation of Ferguson's official status and a passing reference to a warrant along with a recitation of the elements of malicious prosecution under Florida law suggest that Ferguson presented the evidence in an affidavit supporting a warrant application.[10]  In short, if favorably construed, the complaint sufficiently alleges an arrest and initiation of legal process without probable cause–i.e., a Section 1983 claim for malicious prosecution[11] based on a deprivation of a

---

[9]  See Zahrey v. Coffey, 221 F.3d 342, 348 (2d Cir. 2000) ("The manufacture of false evidence, 'in and of itself,' . . . does not impair anyone's liberty, and therefore does not impair anyone's constitutional right."); Landrigan v. City of Warwick, 628 F.2d 736, 744 (1st Cir. 1980) ("[W]e do not see how the existence of a false police report, sitting in a drawer in a police station, by itself deprives a person of a right secured by the Constitution and laws.").

[10]  See also Doc. 29 at 11 (asserting that "the warrants that led to the search of Plaintiff's business and her subsequent seizure were without probable cause"); Doc. 16-2 (June 6, 2002, affidavit of Ferguson and application for capias); Doc. 25 at 9.

[11]  See Whiting v. Traylor, 85 F.3d 581, 583-85 (11th Cir. 1996); Kelly v. Curtis, 21 F.3d 1544, 1553-54 (11th Cir. 1994); cf. Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 4 (1st Cir. 1995) ("The critical inquiry that distinguishes malicious prosecution from false arrest . . . is whether the arrests were made pursuant to a warrant.") (citation omitted); Wallace v. Kato, 127 S. Ct. 1091, 1095-96 (2007) (distinguishing common law false arrest and false imprisonment, which remedy "detention . . . without legal process," from malicious prosecution, which remedies "detention accompanied, not by absence of legal process, but by wrongful institution of legal process") (emphasis in original); Orban v. City of Tampa, No. 8:04-cv-1904-T23MAP, 2006 WL 890149, at *1 (M.D. Fla. Apr. 5, 2006).

clearly established Fourth Amendment right.[12]   Accordingly, qualified immunity is

unavailable at this stage.

Similarly, if liberally construed, the complaint states a claim under Florida law

against Ferguson for malicious prosecution.[13]  Ferguson argues that he enjoys immunity

under Section 768.28(9)(a), Florida Statues, which provides sovereign immunity to a

public official acting within the scope of his duty "unless such officer . . . acted in bad

faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of

human rights, safety, or property."  See also McGhee v. Volusia County, 679 So. 2d

729, 730-33 (Fla. 1996).  However, the complaint sufficiently alleges malicious purpose.

See, e.g., Fla. Dep't of Envtl. Prot. v. Green, 951 So. 2d 918, 920 (4th DCA 2007)

("Because 'malice' is a necessary element of malicious prosecution and section

768.28(9)(a) immunizes the State and its agencies from 'malicious' acts of its

employees while they are acting within the scope of their employment, [the plaintiff] is

barred from bringing a malicious prosecution claim against [the Florida Department of

Environmental Protection].");  Johnson v. State Dep't of Health and Rehabilitative Servs.,

695 So. 2d 927, 930 (2d DCA 1997) (affirming dismissal of malicious claim against a

municipality under Section 768.28(9)(a) because "'Malice is not only an essential

element of malicious prosecution; it is the gist of such a cause of action.'") (quoting

---

[12]  See, e.g., Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004) ("[F]alsifying facts to establish probable cause is patently unconstitutional and has been so long before [the plaintiff's] arrest in 1995.").  The Constitution prohibits a public official from making a perjurious or recklessly false statement or omission in an affidavit supporting a search or arrest warrant, see Kelly v. Curtis, 21 F.3d 1544, 1554 (11th Cir. 1994) (citing Franks v. Delaware, 438 U.S. 154, 156, 165-71 (1978)); Madiwale v. Savaiko, 117 F.3d 1321, 1326-27 (11th Cir. 1997), if the statement or omission is necessary to a finding of probable cause, see Franks, 438 U.S. at 156; Madiwale, 117 F.3d at 1327.

[13]  See Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1355 (Fla. 1994).

Sebring Utils. Comm'n v. Sicher, 509 So. 2d 968, 970 (Fla. 2d DCA 1987)).  However, to the extent that the complaint purports to state a Section 1983 "substantive due process" claim for malicious prosecution (Compl. ¶ 19), the complaint fails to state a claim because the plaintiff "has no right under the substantive component of the Due Process Clause to be free from criminal prosecution without probable clause."  U.S. Steel, LLC, v. Tieco, Inc., 261 F.3d 1275, 1289 (11th Cir. 2001) (citing Albright v. Oliver, 510 U.S. 266, 268 (1994)).[14]   Additionally, although the complaint alleges an unspecified violation of the Fifth Amendment (Compl. ¶ 19), the Fifth Amendment's Due Process Clause applies only to the federal government, see Riley v. Camp, 130 F.3d 958, 972 n.19 (11th Cir. 1997), and the plaintiff alleges no federal participation in the pertinent events.  Accordingly, this claim is due to be dismissed.

The complaint further alleges that the plaintiff's arrest was preceded and followed by "illegal" searches.  Although failing to clearly identify the source of the purported illegality (or even to state whether the searches were conducted pursuant to a warrant), the complaint permits the inference that fabricated evidence resulted in searches not supported by probable cause.  In short, the complaint sufficiently alleges a violation of a clearly established Fourth Amendment right.

---

[14]  "Whether a malicious prosecution claim can be brought via the procedural component of the Due Process Clause is an open question in this circuit."  U.S. Steel, LLC, v. Tieco, Inc., 261 F.3d 1275, 1289 (11th Cir. 2001).  But see Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 43 (1st Cir. 1994); Albright v. Oliver, 510 U.S. 266, 283-84 (1994) (Kennedy, J., concurring in the judgment) (even if the interests protected by the common law of malicious prosecution are protected by the Due Process Clause, "our precedents make clear that a state actor's random and unauthorized deprivation of that interest cannot be challenged under 42 U.S.C. § 1983 so long as the State provides an adequate postdeprivation remedy"); cf. Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 184 (4th Cir. 1996) ("[T]he Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant in order to detain him prior to trial.").

However, the complaint fails to state a Section 1983 excessive force claim. Excessive force in an arrest violates the Fourth Amendment.  Davis v. Williams, 451 F.3d 759, 767 (11th Cir. 2006).  "To assert a Fourth Amendment claim based on the use of excessive force, the plaintiffs must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable."  Troupe v. Sarasota County, Fla., 419 F.3d 1160, 1166 (11th Cir. 2005).  "In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's 'objective reasonableness' standard."  Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008).  "A genuine 'excessive force' claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest."  Hadley, 526 F.3d at 1329.  Determining whether the force used was objectively reasonable requires examination of such factors as "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically."  Hadley, 526 F.3d at 1329.  The need to apply force depends on such factors as the severity of the crime, immediate danger to the officer or others, and attempts to resist arrest or evade arrest by flight.  See Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003).  However, "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  Graham v. Connor, 490 U.S. 386, 396 (1989).  Moreover, "the application of de minimis force, without more, will not support a claim for excessive force."  Durruthy, 351 F.3d at 1094.  "[Q]ualified immunity applies unless application of the [reasonableness] standard would inevitably lead every reasonable officer . . . to

- 12 -

conclude the force was unlawful." Slicker v. Jackson, 215 F.3d 1225, 1232 (11th Cir. 2000) (citation and internal quotation marks omitted).

Although alleging in conclusory fashion that Ferguson arrested Plaintiff "by unnecessary force," the complaint alleges no facts (other than the assertion that Ferguson "coordinated a 'SWAT-style' arrest," which assertion conveys no specific information) supporting the conclusion. In short, the claim fails to comply with the applicable heightened pleading requirement.

Additionally, the complaint fails to state a Section 1983 conspiracy claim as to Ferguson and Bowlin. To establish a prima facie case of a Section 1983 conspiracy, a plaintiff must show that "the defendants reached an understanding to deny the plaintiff's rights." Hadley v. Gutierrez, 526 F.3d 1324, 1332 (11th Cir. 2008) (citing Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir. 1990)). Additionally, the plaintiff must show "an underlying actual denial of [his] constitutional rights." Hadley, 526 F.3d at 1332 (quoting GJR Invs., 132 F.3d at 1370). Finally, to allege a conspiracy, a plaintiff must make "particularized allegations" that a conspiracy exists. GJR Invs, 132 F.3d at 1370. Vague and conclusory allegations suggesting a Section 1983 conspiracy are insufficient. Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984). The complaint alleges that (a) Ferguson conspired with Bowlin "to 'find' Medicaid fraud where it did not exist," (b) Bowlin acted as an expert witness for Ferguson's investigation "in exchange for . . . Officer Ferguson directing Plaintiff's former patients to Defendant Bowlin," and (c) both Bowlin and Ferguson encouraged the plaintiff's patients to visit Bowlin instead of the plaintiff for their dental needs. The complaint alleges no facts showing that the defendants reached an understanding to deny the plaintiff's rights and insufficient facts

from which an inference of a conspiracy can reasonably be drawn.  If the plaintiff meant to allege that Bowlin and Ferguson concocted a scheme to procure the plaintiff's arrest and prosecution by fabricating false evidence of Medicaid fraud, the plaintiff has failed to accomplish her intention.

Nieman

"'It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.'"  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)).  Instead, supervisory liability under Section 1983 occurs "'when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation.'"  Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (quoting Cottone, 326 F.3d at 1360).

> A causal connection may be established when: 1) a 'history of widespread abuse' puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

Crosby, 480 F.3d at 1270 (citing Cottone, 326 F.3d at 1360).  "'The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.'"  West v. Tillman, 496 F.3d 1321, 1329 (11th Cir. 2007) (quoting Hartley, 193 F.3d at 1269).  The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is "extremely rigorous."  Cottone, 326 F.3d at 1360.

The complaint alleges no history of widespread abuse by MFCU investigators and no facts supporting an inference that Neiman directed Ferguson to act unlawfully or knew that Ferguson would act unlawfully and failed to stop him.  The allegation that Ferguson "acquiescie[d]" in Ferguson's unlawful conduct conveys no specific information, and the allegation that Neiman had to approve reports, arrests, and warrants during Ferguson's investigation implies no approval or even awareness of fabricated or distorted evidence.  Additionally, the allegation that Ferguson intentionally or recklessly provided to the authorities false information about the plaintiff's Medicaid billing practices merely restates the legal conclusion that Nieman is responsible for Ferguson's acts.  However, if favorably construed, the complaint sufficiently alleges that Nieman established or utilized a policy of inadequate training resulting in deliberate indifference to constitutional rights.[15]

Bowlin

To state a claim for tortious interference with a business relationship under Florida law, a plaintiff must allege (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights, (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) resulting damage.  Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994).  An actionable business

---

[15]  But see Sherill v. City of Prattville, No. 2:04-cv-760-T, 2005 WL 3277979, *3 (M.D. Ala. Dec. 2, 2005) ("[I]n situations such as this one, when an employee intentionally violated an obvious right, no kind or amount of training could have prevented the violation."); Sewell v. Town of Lake Hamilton, 117 F.3d 488, 490 (11th Cir. 1997) (when "the proper response . . . is obvious to all without training or supervision, the failure to train or supervise" fails to demonstrate deliberate indifference) (quoting Walker v. City of New York, 974 F.2d 293, 299-300 (2d Cir. 1993)).

relationship requires, if not a contract, at least "an understanding between the parties [that] would have been completed had the defendant not interfered." Ethan Allen, 647 So. 2d at 814 (citation omitted).[16]  Although an "identifiable agreement with . . . past customers that they would return" for future business may support a tortious interference claim, "[t]he mere hope that . . . past customers may choose to buy again" will not.  See Ethan Allen, 647 So. 2d at 815.[17]  Further, "a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large." Ethan Allen, 647 So. 2d at 814 (citing So. Alliance Corp. v. Winter Haven, 505 So. 2d 489, 496 (Fla. 2d DCA 1987)).[18]

　　　Bowlin first contends that he is absolutely immune from liability for the acts alleged in the complaint because they were performed in the course of a judicial

---

[16]  But cf. Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc., 262 F.3d 1152, 1157 (11th Cir. 2001) (noting that Ethan Allen declined to "overrule or criticize [Florida] precedent that did not require the plaintiff in a tortious interference case to prove that a contract would have been reached with its business relationship had the defendant not interfered" and that "recent case law generally has not interpreted Ethan Allen to require such proof") (citing Magre v. Charles, 729 So. 2d 440, 444 (Fla. 5th DCA 1999)).

[17]  See also St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc., 784 So. 2d 500, 505 (Fla. 5th DCA 2001) ("The speculative hope of future business is not sufficient to sustain the tort of interference with a business relationship.") (citation omitted). Beacon Prop. Mgmt., Inc. v. PNR, Inc., 785 So. 2d 564, 569 (Fla. 4th DCA 2001) ("We do not believe that the . . . prospect of having future customers constitutes a sufficient existing business relationship for the tort of unjustified interference.") (emphasis in original), decision quashed on other grounds, 842 So. 2d 773 (Fla. 2003). But cf. Ethan Allen, 647 So. 2d at 815 n.1 (distinguishing Field Servs., Inc. v. White & White Inspection & Audit Serv., Inc., 384 So. 2d 303 (Fla. 5th DCA 1980), in which the plaintiff, who had regularly been performing underwriting inspections, premium audits, and loss control work for sixteen insurance company clients, could establish a business relationship with the companies absent written agreements because the relationship was "ongoing" and "far different than the one maintained by a retail furniture dealer with 89,000 past customers."); Austral Insulated Prods., 262 F.3d at 1154-55 (reviewing the "seemingly divergent body of Florida law").

[18]  See also Ferguson Transp., Inc. v. N. Am. Van Lines, Inc., 687 So. 2d 821, 821 (Fla. 1996) ("[T]o establish the tort of tortious interference with a business relationship, the plaintiff must prove a business relationship with identifiable customers."); Sarkis v. Pafford Oil Co., Inc., 697 So. 2d 524, 526-27 (Fla. 1st DCA 1997) (claim of interference with a business relationship properly dismissed because the complaint alleged only a "general loss of business" and failed to "identify the customers who were the subject of the alleged interference").

proceeding.  Florida's litigation privilege affords absolute immunity for acts occurring during the course of a judicial proceeding.  Although initially developed to protect litigants and attorneys from liability for defamatory statements, the privilege now extends to "any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding."  <u>Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., v. U.S. Fire Ins. Co.</u>, 639 So. 2d 606, 608 (Fla. 1994).  The privilege protects witnesses as well as parties, attorneys, and judges.  <u>Levin</u>, 639 So. 2d at 608.  However, the privilege generally does not extend to statements to the police or the state's attorney before the institution of criminal charges or to defamatory statements to private persons outside a judicial proceeding.  See <u>Fridovich v. Fridovich</u>, 598 So. 2d 65, 69 & n.8 (Fla. 1992).  As an affirmative defense, <u>see</u> <u>Am. Nat'l Title & Escrow of Fla., Inc. v. Guarantee Title & Trust Co.</u>, 810 So. 2d 996, 998 (Fla. 4th DCA 2002), the litigation privilege warrants dismissal "when 'the complaint affirmatively and clearly shows the conclusive applicability' of the defense," <u>see</u> <u>Jackson v. BellSouth Telecomms.</u>, 372 F.3d 1250, 1277 (11th Cir. 2004) (citation omitted).  Because the complaint asserts a tortious interference claim based in part on acts outside a judicial proceeding and in part on acts following dismissal of the criminal charges against the plaintiff, dismissal under the litigation privilege is unwarranted.

Bowlin next argues that the complaint fails to allege a business relationship with "identifiable customers."  The complaint alleges that Bowlin (a) provided false information about the plaintiff's Medicaid billing practices to the plaintiff's patients and told the patients that the plaintiff committed malpractice (Compl. ¶¶ 31, 34, 40), and (b) as a result, "a significant number" of the plaintiff's former patients now obtain

treatment from Bowlin.  (Compl. ¶ 27, 29).  Although somewhat vague, the allegations suffice under Rule 8(a)'s simplified notice pleading standard.  See Future Tech Int'l, Inc. v. Tae II Media, Ltd., 944 F. Supp. 1538, 1570 (S.D. Fla. 1996) (Marcus, D.J.) ("Although the complaint is drafted at a high order of abstraction, and does not specifically identify each of the [business] relationships allegedly interfered with, we are hard pressed to conclude that at this early stage of the proceedings that [the plaintiff] could prove no facts to support its cause of action.  Additional specificity is not required under our liberal system of notice pleading.").

Finally, the Bowlin alleges that his alleged acts are justified by the privilege of competition.  However, the complaint sufficiently alleges intentional and unjustified interference,[19] and the privilege of competition is apparently[20] an affirmative defense, whose applicability does not plainly appear from the face of the complaint.

To state a claim for malicious prosecution under Florida law, a plaintiff must allege

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present

---

[19]  See Morsani v. Major League Baseball, 663 So. 2d 653, 657 (Fla. 2d DCA 1995) ("Where there is a qualified privilege to interfere with a business relationship, the privilege carries with it the obligation to employ means that are not improper.") (citing McCurdy v. Collis, 508 So. 2d 380, 384 (Fla. 1st DCA 1987)); Ins. Field Servs., Inc. v. White & White Inspection and Audit Serv., Inc., 384 So. 2d 303, 307 (Fla. 5th DCA 1980) ("Not only must defendants' motive and purpose be proper but so also must be the means.") (citation omitted).

[20]  See Monco Enters., Inc. v. Ziebart Corp., 673 So. 2d 491, 492 (Fla. 1st DCA 1996); Ford Realty, Inc. v. Lane Wood, Inc., 405 So. 2d 222 (Fla. 3d DCA 1981).  But cf. Austral Insulated Prods, 262 F.3d at 1158-59 (noting that under Florida law the distribution of the burden of persuasion as to the privilege of competition is "far from clear").

defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1355 (Fla. 1994).

A defendant does not instigate a criminal proceeding "if the defendant merely gives a statement to the proper authorities, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer or if the officer makes an independent investigation."  McCraney v. Barberi, 677 So. 2d 355, 356 (Fla. 1st DCA 1996) (quoting Orr v. Belk Lindsey Stores, Inc., 462 So. 2d 112, 114 (Fla. 5th DCA 1985)).  "However, if the defendant's persuasion is the determining factor in inducing the officer's decision . . . then the defendant may be held liable." McCraney, 677 So. 2d at 356 (quoting Orr, 462 So. 2d at 114).[21]  To avoid liability, the defendant must convey "a full, complete, and accurate disclosure . . . to a public officer, so that the decision to prosecute is left entirely to his discretion."  Harris v. Lewis State Bank, 482 So. 2d 1378, 1382 n.9 (Fla. 1st DCA 1986).[22]  To demonstrate absence of probable cause, the plaintiff must show that the original criminal proceeding was initiated "without a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged."  Burns v. GCC Beverages, Inc., 502 So. 2d 1217, 1219 (Fla. 1986).  Finally, "[i]n an action for malicious prosecution it is not necessary for a plaintiff to prove actual

---

[21]  See also Harris v. Lewis State Bank, 482 So. 2d 1378, 1381 (Fla. 1st DCA 1986) ("Although legal causation is usually established by the signing of a complaint or affidavit, there is authority for the proposition that the giving of information may constitute the initiation of prosecution, if the information was known by the giver to be false.  The real instigator cannot escape liability by showing he was not the prosecutor of record.").

[22]  See also Martinez v. Brinks, Inc., 410 F. Supp. 2d 1202, 1205 (S.D. Fla. 2004), aff'd, 171 Fed. Appx. 263 (11th Cir. 2006).

malice; legal malice is sufficient and may be inferred from, among other things, a lack of probable cause, gross negligence, or great indifference to persons, property, or the rights of others." Alamo, 632 So. 2d at 1357.[23]  The complaint alleges (a) that Bowlin intentionally provided false information, unsupported by the records he reviewed, about the plaintiff's Medicaid billing practices to the authorities investigating the plaintiff and reported that the plaintiff was guilty of Medicaid fraud and (b) that the reports resulted in the plaintiff's arrest without probable cause.  Favorably construed, the complaint sufficiently alleges legal causation and absence of probable cause and permits an inference of legal malice.

## CONCLUSION

Bowlin's "Motion to Dismiss or in the Alternative Motion for a More Definite Statement" (Doc. 16) is **GRANTED IN PART AND DENIED IN PART** as follows.  The Section 1983 conspiracy claim against Bowlin is **DISMISSED** with leave to re-plead. Additionally, the complaint is **STRICKEN**, and the plaintiff is directed to file an amended complaint that complies with Rule 10(b) by presenting each claim for relief (1) in a separate count under a heading providing the name of the claim and (if a claim under Section 1983) the specific constitutional or statutory right allegedly violated and (2) with such clarity as to permit the defendant to discern the plaintiff's claims and frame a responsive pleading.  Otherwise, the motion is **DENIED**.  Ferguson and Nieman's "Motion to Dismiss Verified Complaint" (Doc. 26) is **GRANTED IN PART AND DENIED**

---

[23]  See also Olson v. Johnson, 961 So. 2d 356, 359 (Fla. 2d DCA 2007) ("Legal malice, which is also referred to as technical malice or malice in law, 'requires proof of an intentional act performed without justification or excuse.'") (quoting Reed v. State, 837 So. 2d 366, 368-69 (Fla. 2002)); Olson, 961 So. 2d at 359 ("Legal malice may be inferred from one's acts, and–unlike actual malice–does not require proof of evil intent or motive.") (internal quotations omitted).

**IN PART** as follows.  As to Ferguson, to the extent that the complaint purports to state (1) a Section 1983 claim for excessive force in violation of the Fourth Amendment, (2) a Section 1983 conspiracy claim, (3) a Section 1983 claim for violation of the substantive component of the Fourteenth Amendment's Due Process Clause, and (4) a Section 1983 claim based on the Fifth Amendment's Due Process Clause, the claims are **DISMISSED** with leave to re-plead.  As to Nieman, all claims except the Section 1983 failure to train claim are **DISMISSED** with leave to re-plead.  On or before **January 10, 2009**, the plaintiff may file an amended complaint correcting the deficiencies discussed in this order, failing which this action will be dismissed.

ORDERED in Tampa, Florida, on December 16, 2008.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE