UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALLENA BURGE, D.M.D.,

    Plaintiff,

v.                                      CASE NO.: 8:07-cv-2217-T-23TGW

THEODORE FERGUSON,

    Defendant.

_____/

## **ORDER**

The plaintiff Allena Burge ("Dr. Burge") sues (Doc. 72) pursuant to both 42 U.S.C. § 1983 ("Section 1983") and state law for malicious prosecution. The defendant Theodore Ferguson ("Ferguson") moves (Doc. 117) for summary judgment, and the plaintiff responds (Doc. 139) in opposition.

### Background

As a state employee, Ferguson investigated Medicaid fraud for the Office of the Attorney General.[1] On June 6, 2002, Ferguson signed an ex parte affidavit seeking a warrant for the arrest of Dr. Burge, a dentist specializing in oral surgery, for a violation of Section 409.920(2)(a), Florida Statutes, which section prohibits Medicaid provider fraud.[2] The affidavit states that, in the course of investigating an allegation against Dr.

---

[1] (Docs. 72, 76-2, 117, 139)

[2] (Docs. 72, 117, 139)

Burge, Ferguson (1) reviewed Dr. Burge's billing records for January 1, 1998, through April 2, 2002; (2) interviewed twenty-one Medicaid recipients (or the parent or guardian of a Medicaid recipient) who received dental care from Dr. Burge; (3) interviewed three former surgical assistants and two former "office managers/administrative assistants" of Dr. Burge; and (4) consulted Dr. Walter Q. Bowlin, Jr., "a practicing dentist/oral surgeon[] who [wa]s familiar with the Medicaid Program and retained by the Office of the Attorney General to assist in determining the amount and type of fraud committed by Dr. Burge [and who] examined copies of dental charts, dental x-rays, reports concerning the interviews of the Medicaid patients, and examined some of the Medicaid patients during th[e] investigation."[3] The affidavit describes Dr. Bowlin's finding that Dr. Burge had engaged in "fraudulent billing" (1) by performing surgical extractions without a "reason or medical necessity," (2) by billing for phenobarbital even though Dr. Burge administered no phenobarbital, and (3) by billing for both "behavior management" and anesthesia or other sedation. Dr. Bowlin estimated that Dr. Burge's alleged "fraudulent billing" totaled $435.23. The affidavit also describes five examples of alleged fraud in Dr. Burge's billing for dental services. Based on Ferguson's affidavit, the state attorney filed a felony charge against Dr. Burge on June 12, 2002, and officers arrested Dr. Burge on June 28, 2002.[4] On December 22, 2003, the state attorney dismissed the charge.

---

[3] (Doc. 76-2)

[4] (Doc. 139)

Dr. Burge sued and alleged that Ferguson "both intentionally and recklessly" (1) "falsely stated facts material to the alleged probable cause underlying Dr. Burge's arrest and prosecution" and (2) "omitted material facts from his ex parte affidavit that, if disclosed, would have led to the conclusion that no probable cause existed to support Dr. Burge's arrest and prosecution."[5] Ferguson moves (Doc. 117) for summary judgment and argues (1) that "[n]egligent conduct does not constitute the type of abuse of government power that is cognizable under Section 1983;" (2) that the plaintiff provides no evidence supporting the allegation that Ferguson "knew at the time he executed his application for an arrest warrant[] that any of his statements were false;" (3) that the plaintiff provides no evidence showing either bad faith or malice; and (4) that qualified immunity protects Ferguson, because the plaintiff fails to show that Ferguson acted without probable cause.[6]

In response, the plaintiff argues and provides evidence to support the assertion (1) that, although Ferguson relied "on patients' recollections of whether Dr. Burge surgically extracted teeth, [provided] bone grafts, or [procured] impressions . . . [Ferguson] . . . conceded that the[] [patients] were under anesthesia and would not [have] be[en] able to determine if [a] procedure occurred;" (2) that Ferguson knew both that Dr. Burge's former employee, Paula Dominguez, who submitted Medicaid claims "'had a problem' with Dr. Burge" and that, although Dominguez claimed that Dr. Burge performed unnecessary surgical procedures and improperly billed for pathology reports,

---

[5] (Doc. 72)

[6] (Doc. 117)

- 3 -

Dominguez possessed neither the training to determine whether such procedures were "unnecessary" nor the knowledge of Medicaid to determine whether Dr. Burge could properly bill for pathology reports (in fact, Medicaid permits such billing); (3) that, although Ferguson retained Dr. Bowlin to review Dr. Burge's patient records and determine whether fraudulent billing occurred, Ferguson failed to provide certain, critical patient records to Dr. Bowlin, which records Ferguson obtained from Dr. Burge; (4) that, although Ferguson "relies heavily on the pre-arrest affidavits of fiver former employees of Dr. Burge . . . [Ferguson] failed to take the reasonable investigative step of assessing the[] [employees'] obvious biases . . . [and] unreasonably failed to disclose the[] [employees'] biases in his affidavit;" (5) that "inexplicably and unreasonably" Ferguson "failed to interview a fellow law enforcement officer, Tom Potito, who served as Dr. Burge's full-time dental assistant, and who became a Pinellas County Sheriff's Deputy in 2000;" (6) that Ferguson "failed to interview Tiffany Flournoy, who was Dr. Burge's billing clerk and surgical assistant;" (7) that both Potito and Flournoy possessed exculpatory information, and (8) that several of the patients that Ferguson claimed to have interviewed never, in fact, spoke with Ferguson.

    Additionally, the plaintiff argues that in his affidavit Ferguson cites "as a primary example of Medicaid fraud" Dr. Burge's billing for "same day office visits and surgery." However, Ferguson spoke with Glen Stone, an official with the Bureau of Medicaid Program Administration, who informed Dr. Burge that Medicaid permits billing on the same day for both an office visit and surgery. Therefore, the plaintiff argues that

- 4 -

"Ferguson either know, or should have known, that Stone authorized billing for same day office visits and surgery."

## Discussion

Both an arrest without probable cause (or at least "arguable probable cause") and the falsification of facts to establish probable cause violate the Fourth Amendment. Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004); Durruthy v. Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003); Riley v. City of Montgomery, 104 F.3d 1247, 1253 (11th Cir. 1997). Although a law enforcement officer need not "'explore and eliminate every theoretically plausible claim of innocence before making an arrest,'" the analysis of qualified immunity "must charge [the officer] with possession of all the information reasonably discoverable by an officer acting reasonably under the circumstances . . . . '[A] police officer may not close his or her eyes to facts that would help clarify the circumstances of an arrest.'" Kingsland, 382 F.3d at 1228-29 (quoting Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) and Sevigny v. Dicksey, 846 F.2d 953, 957 n.5 (4th Cir. 1988)) (citation omitted). "'[I]n an action to recover damages for malicious prosecution [in which] . . . the evidence is in dispute, the existence or non-existence of malice and want of probable cause are questions of fact for the jury.'" Kingsland, 382 F.3d at 1235 (quoting Good Holding Co. v. Boswell, 173 F.2d 395, 399 (5th Cir. 1949)).

Because on summary judgment Dr. Burge receives a favorable construction of the facts and because the evidence as to both malice and probable cause is in dispute, summary judgment in this action is inappropriate.

Conclusion

Accordingly, Ferguson's motion for summary judgment (Doc. 117) is **DENIED**.

ORDERED in Tampa, Florida, on July 23, 2010.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE